IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| CHAE JOHNSON, #1493753 | § | |
| VS. | § | CIVIL ACTION NO. 9:10cv151 |
| MICHAEL SIZEMORE, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

Plaintiff Chae Johnson, a prisoner confined in the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was originally referred to the undersigned pursuant to 28 U.S.C. § 636(b), who issued a Report and Recommendation on June 13, 2011, that this matter should be dismissed. The case was then referred to the undersigned for jurisdiction in all matters pursuant to 28 U.S.C. § 636(c) and the consent of the parties in an Order entered on June 17, 2011. The Plaintiff has filed no objections to the original Report and Recommendation. For the reasons stated herein, this matter will be dismissed.

**I.    Background**

In his complaint, Plaintiff alleges that on January 15, 2009, he was seen by Dr. Sandra Smock,[1] who opined he had a "deformity A.C. site collar bone" and "scapula - shoulder blade

---

[1] Also referred to as a nurse practitioner in the record and in Plaintiff's grievance statements.

abnormal placement." Complaint at 4. He further alleged that because of the dislocation, Plaintiff requested a restriction to light duty from prison physician Dr. James Smith, which Dr. Smith refused.

Plaintiff also alleges that on two occasions, in October 2009 and on June 23, 2010, he had appointments to be seen by an orthopedics physician, but he missed them because "one unknown officer neglected to escort" him to his appointments. *Id*. However, he alleges, this unknown officer made a "false statement" that Plaintiff had "refused to come out of his cell." *Id*. Plaintiff also attached copies of the grievance forms he submitted within the prison grievance system, which essentially repeat the basic allegations of his complaint.

On June 2, 2011, the Court conducted an evidentiary hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Supervisor Ginger Lively, Warden William Motal and Nurse Kathy Grey testified under oath about prison policies and information contained in the Plaintiff's prison records.

Plaintiff testified that he was regularly assigned work on the prison "Hoe Squad," cutting grass with garden tools. He also testified that he recently saw a doctor for sinus and allergy problems, but the doctor would not examine his shoulder because Plaintiff was wearing handcuffs. He further testified that he had injured his shoulder in an altercation "a few years ago" before he was in prison and that a bone in his shoulder had been dislocated. He entered the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID") in August 2008. He stated that

2

his shoulder bothers him "a lot" and he has brought it to the attention of prison officials but has not received medical attention.

Nurse Grey testified that there is no note in Plaintiff's medical record regarding a January 15, 2009, examination by Dr. Smock. Plaintiff's medical records do reflect that he was seen on June 25, 2009, for his shoulder popping out of place. He had limited range of motion secondary to pain and was referred to orthopedics. On October 7, 2009, Nurse Practitioner Ruby noted that Plaintiff's shoulder still hurt, was popping and was restricted in motion. It was noted that he had an appointment in two weeks and no change in his duty restrictions would be made until he was seen in orthopedics. On April 12, 2010, an entry indicated that Plaintiff wanted a referral to orthopedics. However, his examination showed no range of motion deficits; his examination was normal; an X-ray showed mild degenerative changes; and he was referred to orthopedics but given no change in his work restrictions. On June 23, 2010, Plaintiff was scheduled for an orthopedics examination, but he refused to be escorted to it; the doctor made a "no-show" entry on Plaintiff's medical record.

Nurse Grey further testified that on October 19, 2010, Defendant Dr. Smith examined Plaintiff for his shoulder and allergies. Tenderness was noted. Dr. Smith could not test Plaintiff's range of motion because he was wearing handcuffs, but showed no pain. Dr. Smith made no change to Plaintiff's work restrictions. On April 12, 2011, Dr. Smith again saw Plaintiff and noted his original injury from the altercation in 2007 and a re-injury from weightlifting in 2009. Plaintiff's medical records also reflected no-shows for appointments in September 2010. Notes reflect no deformity and no edema. Dr. Smith opined there was no medical necessity for a change in Plaintiff's work restrictions. He prescribed Ibuprofen.

Warden Motal testified that when an inmate is assigned to administrative segregation, as Plaintiff was, and has a medical appointment, two officers escort him and stay with him during the entire time. If the officers go to the inmate's cell and the inmate refuses to cooperate, it is taken as a refusal of treatment; also, the inmate could affirmatively refuse to attend the appointment. When that occurs, the officers document the refusal and inform the infirmary.

Plaintiff then testified that in the case of his documented refusal to attend his appointments, a Correctional Officer came to his cell, informed him of his appointment and asked him if he wanted to go. Plaintiff asserted he had waited 16 months for an appointment and told the Correctional Officer, yes, he wanted to go. However, he testified, the officer then walked off and never came back. He also testified he asked for the officer's name and his supervisor's name, but never received it. He stated he had never seen the officer before.

Regional Grievance Supervisor Lively testified that Plaintiff had exhausted his administrative grievances and presented Plaintiff's Grievance, Medical and Classification records for review. Plaintiff agreed that the Court could review his records.

## II.    Discussion and Analysis

Although Plaintiff alleges in his complaint that he has been "denied access to Orthopedic Treatment," Complaint at 4, that is clearly not the case based on the content of his medical record and Nurse Grey's testimony. Furthermore, the specific claims he makes against each named defendant state: (1) Warden Sizemore omitted facts from Plaintiff's medical file in relation to his treatment and job placement; (2) Dr. Smith refused to acknowledge Plaintiff's medical condition in relation to his job placement; and (3) Eastham Health Coordinator Roberts neglected Plaintiff's medical condition and omitted orthopedic treatments. *Id*. at 3. He does not otherwise identify a

4

specific constitutional or federal law basis for his § 1983 claim, but his "denial of access" claim can be construed as falling under the Eighth Amendment.

To state a claim under the Eighth Amendment for denial of medical care, a Plaintiff must allege acts or omissions "sufficiently harmful to evidence a deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *Norton v. Dimanzana*, 122 F.3d 286, 291 (5th Cir. 1997). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *Norton*, 122 F.3d at 291. It occurs when two requirements are met. "First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (internal citations and quotations omitted). Second, the prison official must subjectively know of and disregard a substantial risk to the inmate's health or safety. *Id*. at 839-40.

In this light, deliberate indifference is "an extremely high standard to meet," and requires a showing that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. TDCJ-ID*, 239 F.3d 752, 756 (5th Cir. 2001). "An incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference." *Id*. (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Additionally, "the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" *Domino*, 239 F.3d at 756 (citing *Estelle*, 429 U.S. at 107). Furthermore, "the 'failure to alleviate a significant risk that [the official] should have perceived, but did not' is insufficient to show

5

deliberate indifference." *Domino*, 239 F.3d at 756 (citing *Farmer*, 511 U.S. at 838). Neither an incorrect diagnosis nor mere negligence nor even medical malpractice rises to the level of a constitutional violation. *Id.*; *see also Neely v. Khurana*, 2009 WL 1605649, at *8 (N.D. Tex. June 5, 2009).

Accepting Plaintiff's allegations as true, he has failed to state a claim under § 1983. Plaintiff clearly admits that he received an examination and consultation with a physician, Dr. Smith. Further, the medical records and Nurse Grey's testimony show that he has been given medical treatment on a number of occasions since the time of his incarceration, including specifically for his shoulder. Many of these examinations have resulted in referrals for further orthopedic examination and for medication. The mere fact that his treating physician, Dr. Smith, exercised his professional medical judgment to determine that Plaintiff did not require the medical restrictions he desired in his prison job placement falls entirely within the doctor's purview and does not subject him to liability for simply disagreeing with Plaintiff. *Domino*, 239 F.3d at 756. Moreover, there is no evidence that either Dr. Smith or other prison officials, including Warden Sizemore or Health Coordinator Roberts, "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id*.

In fact, Plaintiff has pleaded no factual allegations against either Warden Sizemore or Health Coordinator Roberts in his complaint. Neither of them appear at all in his statement of his claim. *See* Complaint at 4. They only appear in the list of defendants Plaintiff seeks to sue with the very brief descriptions of his complaint against them, but no facts at all to support them. *See id.* at 3. "In § 1983 cases, our Court requires that the 'claimant . . . state specific facts, not merely conclusory

6

allegations.'" *See Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986) (per curiam) (quoting *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986)). Here, Plaintiff's mere naming of these two as defendants, without any factual allegations, is the epitome of conclusory allegation.

Further, to the extent that Plaintiff intends that Warden Sizemore and Health Coordinator Roberts be sued for their supervisory roles, his claims still fail. In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates the defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Neither of these two individuals participated in the alleged acts of denial of medical care. They were possibly sued because of their supervisory roles, but the doctrine of *respondeat superior* does not apply in § 1983 actions. *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990). Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Neither condition is satisfied by Plaintiff's bare allegations and supplemental testimony at the *Spears* hearing. Therefore, Plaintiff's *respondeat superior* claims fail in any case.

For these reasons, Plaintiff's complaint fails to state a claim upon which relief may be granted and will be dismissed as frivolous pursuant to 28 U.S.C. § 1915A(b)(1).

It is therefore

**ORDERED** that Plaintiff's complaint is dismissed with prejudice for failure to state a claim upon which relief may be granted and as frivolous pursuant to 28 U.S.C. § 1915A(b)(1). It is further

**ORDERED** that all motions not previously ruled on are hereby **DENIED**.

So **ORDERED** and **SIGNED** this **30** day of **June, 2011.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE